```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
WILLIAM PATRICK WHALEN, et al.,          :
                                          :      OPINION &
                    Plaintiffs,           :      ORDER
                                          :
         - against -                      :      04 Civ. 3182
                                          :
HIBERNIA FOODS PLC, OLIVER MURPHY,       :
COLM DELVES, & PRICEWATERHOUSE            :
COOPERS.                                  :
                                          :
                    Defendants.           :
------------------------------------------------------------x
```

**Hon. HAROLD BAER, JR., District Judge:**

This civil action came before me on Defendant Pricewaterhouse Cooper's motion to dismiss Plaintiffs' Amended Class Action Complaint ("Complaint") for violations of securities laws. For the reasons set forth below Defendant's motion to dismiss is DENIED.

### I.   BACKGROUND

This securities fraud class action suit has been brought against Hibernia Foods, PLC ("Hibernia"), an Irish public company that exported beef until the "mad cow" episode in 1997 when it switched to the sale of frozen desserts and ready-made meals. Also named as Defendants are two Hibernia executives and Hibernia's independent auditor, Pricewaterhouse Coopers ("PwC"). PwC was Hibernia's auditor for over three years and conducted audits of Hibernia's financial statements for the fiscal years ending March 31, 2000, 2001, and 2002. PwC certified that Hibernia's financial statements presented fairly, in all material respects, the financial position of Hibernia and its subsidiaries, that the statements complied with United States Generally Accepted Accounting Principles ("GAAP"), and that PwC's audits had been conducted in accordance with Generally Accepted Auditing Standards ("GAAS").

1

In October 2003, after it suffered significant financial problems Hibernia was forced into receivership by one of its creditors, General Motors Acceptance Corporation. Plaintiffs are the purchasers of securities issued by Hibernia throughout the class period (August 2, 1999 to October 21, 2003). They assert that management overstated the value of the company and painted a rosy picture of the finances when in reality the company was deeply in debt and falling apart.

The Complaint maintains that PwC, the company's auditor, falsely represented that Hibernia's financial statements fairly and accurately represented the financial position and the results of its operations in accordance with GAAP, and that PwC's audits complied with GAAS – when they did not. Specifically, Plaintiffs allege that PwC knew or recklessly disregarded risk factors e.g., Hibernia's repeated default on payments to lenders and suppliers and the sale of inventory at a loss to generate cash flow. PwC has moved to dismiss for a failure by Plaintiff to allege with particularity that PwC made any misstatements, and that Plaintiff failed to plead "facts" sufficient to support a strong inference that PwC acted with scienter. The facts alleged in the Complaint against PwC support a strong inference that the firm acted with the requisite scienter as set out in the Private Securities Litigation Reform Act ("PSLRA").

## II. DISCUSSION
### A. Applicable Legal Standard

Fraud claims must satisfy the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that "in all averments of fraud or mistake, <u>the circumstances constituting the fraud or mistake shall be stated with particularity.</u>" Fed. R. Civ. P. 9(b)(emphasis added). In addition, allegations of securities fraud also must satisfy the specific pleading requirements of the PSLRA. In order to state a claim for securities fraud under Section 10(b) of the Exchange Act

2

and Rule 10b-5, pursuant to the sections which this Complaint is framed requires a plaintiff to allege that the defendant "made a false statement or omitted a material fact, with scienter, and that plaintiff's reliance on the defendant's action caused injury to the plaintiff." Ganino v. Citizens Utilities Co., 228 F.3d 154, 161 (2d Cir. 2000). At this stage of the proceedings, the Court's task is to "'assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998)(quoting Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1994). Also, the Court must "accept as true all factual allegations in the complaint." Id. Under Rule 12(b)(6), a complaint should not be dismissed unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Levitt v. Bear Stearns & Co., Inc., 340 F.3d 94, 101 (2d Cir. 2003)(citations omitted).

### B. Sceinter

The scienter required to state a claim under Section 10(b) is a "mental state embracing intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n.12 (1976). Under the PSLRA, the law requires that any complaint alleging a violation of Section 10(b) must "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading" and must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1)(B) and (b)(2); see Kalnit v. Eichler, 264 F.3d 131, 138 (2d Cir. 2001). A plaintiff can meet this test in either of two ways: "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." Kalnit, 264 F.3d at 138-39 (internal quotations and citations omitted).

Defendant argues that Plaintiffs' allegations are not specific enough to show how and when PwC acquired knowledge of an alleged fraud. To plead with particularity does not require at this stage that Plaintiff spell out the very moment PwC should have known about the alleged fraud or that PwC had actual knowledge of the scope or particulars of the scheme. See, e.g. In re Complete Mgmt. Inc. Sec. Litig., 153 F. Supp. 2d 314, 334-35 (S.D.N.Y. 2001)(rejected defendant auditor's argument that the complaint failed to allege how the auditor would have been aware of an alleged fraud of its client's largest account, and stated that "[s]uch specificity is more than Rule 9(b) and the PSLRA demand at this stage in the litigation"); In re Health Mgmt. Inc. Sec. Litig., 970 F. Supp. 192, 204 (E.D.N.Y. 1997)(rejected the argument that plaintiffs complaint was deficient because it failed to allege that defendant had actual knowledge of the alleged fraud).

*i. Motive and Opportunity*

It is sufficient if motive allegations "'entail concrete benefits [to the Defendant] that could be realized by one or more of the false statements and wrongful nondisclosures alleged.'" Novak v. Kasaks, 216 F.3d 3000, 307 (2d Cir. 2000)(quoting Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1130 (2d Cir. 1994). Plaintiffs allege that PwC wanted to keep Hibernia as a client so that PwC could continue to derive a financial benefit from its client. While not so far fetched to me, the current state of the case law holds otherwise and concludes that no independent auditor would risk ruination of its reputation for the fees it would collect in order to suppress fraud. See, e.g., Duncan v. Pencer, 1996 WL 19043, at *9-10 (S.D.N.Y. Jan. 18, 1996)(dismissed allegation that professional fees constitute motive to commit fraud reasoning that the court should not "infer such manifestly economically irrational behavior by these professionals"). Id. at *10.

4

### ii. Strong Circumstantial Evidence of Conscious Misbehavior or Recklessness

The more difficult determination here is whether Plaintiffs have included facts in their Complaint sufficient to demonstrate strong circumstantial evidence of conscious misbehavior or recklessness by PwC. Allegations of GAAP and GAAS violations alone are insufficient. See, e.g., In re Oxford Health Plans, Inc., Sec. Litig., 51 F. Supp. 2d 290, 295 (S.D.N.Y. 1999). To survive dismissal, Plaintiffs must allege circumstantial evidence of reckless conduct by PwC, which constitutes:

> At the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.

In re Complete Mgmt., 153 F. Supp. 2d at 324-25 (quoting Rolf v. Blyth, Eastman Dillon & Co., 570 F.2d 38, 47 (2d Cir. 1978)). In the context of an audit, it is sufficient to show that the accounting practices were so deficient that "the audit amounted to no audit at all, or 'an egregious refusal to see the obvious, or to investigate the doubtful.'" SEC v. Price Waterhouse, 797 F. Supp. 1217, 1240 (S.D.N.Y. 1992). It is clear, however, that auditors must be viewed as separate from the companies they audit, and that auditors are not presumed to know every aspect of the company's business. Bily v. Arthur Young & Co., 3 Cal. 4th 370, 834 P.2d 745, 762 (Cal. 1992)("An auditor is a watchdog, not a bloodhound. As a matter of commercial reality, audits are performed in a client-controlled environment.").

Plaintiffs allege far more than GAAP and GAAS violations, PwC knew about and ignored a wide variety of "red flag" incidents or events, that should have put PwC on notice that fraud was afoot, and that taken together they are sufficient for the Court to find a strong inference of recklessness. In re Oxford Health Plans, 51 F. Supp. 2d at 290 (complaints from providers who had not been paid); CMNY Capital, L.P. v. Deloitte & Touche, 821 F. Supp. at 165 (records of fictitious sales as

5

revenue); In re AOL Time Warner Inc. Sec. & "ERISA" Litig., 2004 U.S. Dist. LEXIS 7917 at *122 (allegations of scienter sufficient where in addition to numerous GAAP and GAAS violations, plaintiff alleged a series of "red flags"). Here, the "red flags" include, inter alia, allegations that Hibernia (1) repeatedly defaulted on payments to lenders and suppliers, (2) sold its products at a loss, (3) recognized revenue on products that had not been shipped, and (4) failed to write off valueless inventory or write down long-lived assets. Complaint at ¶¶ 30,32-35, 39-40, 42-46.

PwC argues that these "red flags" offer only conclusory allegations that PwC should have known this behavior was tantamount to fraud. But these facts, which must at this stage of the litigation be taken as true, illustrate at the very least behavior that could not conceivably escape a rational auditor's critical eye, if his eyes were open. The Complaint alleges that throughout the class period Hibernia could not pay its suppliers, and this conduct was so egregious that several creditors refused to continue shipping because of non-payment by Hibernia. Complaint at ¶ 30, 32. Others filed legal actions. Id. The Complaint also alleges an ongoing practice of classifying discounts and rebates as "operating expenses," instead of deductions from the sales price of products. Complaint at ¶ 24, 206. Other allegations include, the recognition of revenue for orders never placed and never shipped, such as a £1 million sale to Safeway, one of Hibernia's largest customers, even though Hibernia never received a purchase order. Complaint at ¶ 40.

Each of these allegations standing alone would fail to satisfy the stringent requirements of the PSLRA and I have dismissed cases where more than one "red flag" was present, but in my view insufficient. See, e.g., Feasby v. Industri-Matematik Int'l Corp., 2000 U.S. Dist. LEXIS 9792 (S.D.N.Y. July 14, 2000)(Baer, J.). But here, when all the "flags" are run up the same poll, it seems inescapable that a reasonable auditor was on notice, and acted recklessly when it disregarded all the "flags." See In re Oxford Health Plans, 51 F. Supp. 2d at 295 (citing In re the Leslie

Fay Cos., Inc., Sec. Litig., 871 F. Supp. 686 (S.D.N.Y. 1995)("because the "red flags" would clearly be evident to any auditor performing its duties, one could reasonably conclude that [the accountant] must have noticed the "red flags," but deliberately chose to disregard them")).

There is also specific factual support in the Complaint for the assertion that PwC knew or should have known about the company's alleged fraudulent accounting practices. Rothman v. Gregor, 220 F.3d 81, 91 (2d Cir. 2000)(complaint need not "fix the exact date and time that [defendants] became aware" of information that rendered their accounting practices misleading, "they must supply some factual basis for the allegation" that defendants had knowledge of the alleged fraud).

First, there is the allegation that PwC was told by a former Hibernia finance manager that the company's cash situation had become so severe the Managing Director of Frozen Desserts was paying suppliers out of his personal bank account. Complaint at ¶ 50, 238. There is also the allegation that sometime before the end of the class period on October 21, 2003, Hibernia began to fall behind in payments to PwC and PwC delayed its audit as a result. This seems to hit pretty close to home, indeed in its own backyard.

PwC argues that Plaintiffs have not adequately identified their confidential sources, but confidential sources are sufficiently identified "provided they are described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." Novak, 216 F.3d at 314. The Complaint identifies former Hibernia employees upon which certain allegations are based. For each, the Complaint details their role and responsibilities. The confidential sources here are easily distinguished from the cases on which PwC relies such as In re MSC Indus. Direct Co., Inc. Sec. Litig., 283 F. Supp. 2d 838, 847 (E.D.N.Y. 2003), where plaintiffs identified

confidential witnesses as former corporate or executive employees without any description of positions, work assignments, or any other information.

PwC also contends that there is a temporal problem with these assertions because one or two allegations involve facts that occurred sometime after PwC issued its audits so they cannot be tied to any alleged misstatement. PwC never completed the 2003 audit or issued any report on Hibernia's 2003 financial statements, so according to PwC, these facts cannot serve to sustain Plaintiffs' claims against PwC. Plaintiffs do not place a specific timeframe on these events but only that they occurred within the class period from August 2, 1999 to October 21, 2003. PwC does not contest that they were made during the class period and while PwC was still employed as Hibernia's independent auditor. The timing of these events is an issue of fact that cannot be determined at this stage of the proceedings. While the mountain constructed by Congress in order for courts to sanction class actions is high, perhaps too high, the allegations here suffice to allow Plaintiffs to climb that mountain. The Plaintiffs have alleged ample events with ample specificity to find that there is strong circumstantial evidence of recklessness and thus the complaint will survive this motion to dismiss.

### III. CONCLUSION

The proof may or may not establish recklessness by PwC in its role as Hibernia's auditor and in any event, the Amended Complaint satisfies pleading standards for purposes of this motion. Accordingly, the motion to dismiss is DENIED. The Clerk of the Court is instructed to close this motion.

The parties are instructed to appear in chambers for a pre-trial conference at 2:30 p.m. on Wednesday, August 3, 2005, and should at least attempt to fill out a Pre-Trial Scheduling Order ahead of time.

**IT IS SO ORDERED.**
New York, New York
August \_\_, 2005

_____
U.S.D.J.